# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | Case No. 1:19-cv-151 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| OTC LOGISTICS LLC, *et al.*, | : | |
| Defendants. | : | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

This civil action is before the Court on Plaintiff's motion for temporary restraining order, preliminary injunction, and expedited discovery (Doc. 3) and the parties' responsive memoranda. (Docs. 5 and 6).

### I. BACKGROUND

Plaintiff Total Quality Logistics, LLC ("TQL") is an Ohio limited liability company with its principal place of business in Clermont County, Ohio. (Doc. 2 at ¶ 2). TQL provides freight brokerage and third-party logistics services to customers across the continental United States. (*Id.*). TQL provides shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and assistance with supply-chain management. (*Id.* at ¶ 6).

Defendant OTC Logistics, LLC ("OTC") is a Texas limited liability corporation with its principal place of business in Houston, Texas. OTC is a direct competitor of TQL. (*Id.* at ¶¶ 3, 17).

Defendant Andrew Cain, an Indiana resident, is a former employee of TQL. (*Id.* at ¶ 4). Cain worked for TQL from November 9, 2015 until October 31, 2018 in the positions of Logistics Account Executive Trainee, Logistics Account Executive, and Senior Logistics Account Executive. (*Id.* at ¶¶ 11, 15). TQL contends that Cain received extensive training from TQL and had access to TQL's trade secrets and confidential information. (*Id.* at ¶ 16).

On his first day as a TQL employee, Cain signed TQL's "Employee Non-Compete, Confidentiality, and Non-Solicitation Agreement" (the "Agreement"). (Doc. 2-1). The Agreement contains the following one-year restrictive covenant:

> Employee will not, directly or indirectly, own, operate, maintain, consult with, be employed by (including self-employment), engage in, or have any other interest (whether as an owner, shareholder, officer, director, partner, member, employee, joint venture, beneficiary, independent contractor, agent, or any other interest) in any Competing Business (as defined below) except the ownership of less than 1 % of the outstanding equity securities of any publicly held corporation or entity; and,
>
> Employee will not directly or indirectly, either as an employee, agent, consultant, contractor, officer, owner, or in any other capacity or manner whatsoever, whether or not for compensation, participate in any transportation intermediary business that provides services in the Continental United States, including but not limited to any person or organization that provides shipping, third-party logistics, freight brokerage, truck brokerage, or supply chain management services.

(*Id.* at § 9(b)(i)–(ii)). The Agreement defines "Competing Business" as "any person, firm, corporation, or entity that is engaged in shipping, third-party logistics, freight brokerage, truck brokerage, or supply-chain management services in the Continental

United States." (*Id.* § 9(f)). The Agreement prohibits Cain from soliciting any TQL customers or motor carriers, taking action to divert business from TQL, interfering with or attempting to disrupt TQL's relationships, or soliciting TQL employees or former employees. (*Id.* at § 9(b(iii)–(v)).

The Agreement also prohibits Cain from disclosing or using any of TQL's confidential information, including operating policies and procedures, financial records, transaction history, pricing information, terms of business dealing with customers, marketing and sales strategies, and customer lists and related information. (*Id.* at ¶¶ 5, 9(c)).

Cain agreed that in event of breach or threatened breach of any restriction in the Agreement, TQL would be entitled to an injunction restraining such activity. (*Id.* at § 9(e)). Cain also agreed that for any time in which he was in violation of the Agreement, the running of the one-year restrictive covenant would be tolled. (*Id.* at § 9(b)(vi)).

After being warned numerous times about tardiness and absenteeism issues, Cain was terminated on October 31, 2018 for submitting a falsified doctor's note to excuse an absence. (Doc. 6-1 at ¶ 10). Cain admits that he immediately began working for OTC, a direct competitor of TQL, in the same role and city in which he was employed by TQL. (Doc. 5-2 at ¶ 2). TQL also contends that Cain contacted a former TQL employee asking him for help in landing his former client at TQL in exchange for money. The former TQL employee reported Cain's request to TQL. (Doc. 6-1 at ¶ 11).

TQL brings this action to enforce the restrictive covenant against Cain included in the Agreement.

## II. STANDARD OF REVIEW

Plaintiff bears <u>the heavy burden</u> of demonstrating its entitlement to injunctive relief. An "injunction is an **extraordinary remedy** which should be granted only if the movant carries his or her burden of proving that the circumstances <u>clearly</u> demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (emphasis added). Thus, the party seeking the injunction must establish its case by clear and convincing evidence. *Marshall v. Ohio University*, No. 2:15-cv-775, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Honeywell, Inc. v. Brewer-Garrett Co.*, 145 F.3d 1331 (6th Cir. 1998)).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id.* These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

## III. ANALYSIS

### A. Likelihood of Success on the Merits

TQL argues that the restrictive covenants in the Agreement are enforceable because they are reasonable and protect TQL's legitimate business interests. Defendants argue that TQL has no legitimate business interest to protect with regard to Cain and that the terms of the Agreement are so overbroad that they are unenforceable.

In Ohio, reasonable non-compete agreements are enforced, and unreasonable non-compete agreements are enforced to the extent necessary to protect an employer's legitimate interest. *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268, 275 (Ohio Ct. App. 2000). The Supreme Court of Ohio has held that "[a] covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 544 (Ohio 1975).

Courts consider the following nine factors in assessing the reasonableness of a non-compete agreement: (1) whether the covenant imposes temporal and spatial limitations, (2) whether the employee had contact with customers, (3) whether the employee possesses confidential information or trade secrets, (4) whether the covenant bars only unfair competition, (5) whether the covenant stifles the employee's inherent skill and experience, (6) whether the benefit to the employer is disproportionate to the employee's detriment, (7) whether the covenant destroys the employee's sole means of

support, (8) whether the employee's talent was developed during the employment, (9) and whether the forbidden employment is merely incidental to the main employment. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) (citing *Raimonde*, 325 N.E.2d at 544). If a non-compete agreement is unreasonable, courts are empowered to modify the terms to create a reasonable covenant between the parties. *Rogers v. Runfola & Assoc. Inc.*, 565 N.E.2d 540, 544 (Ohio 1991).

Here, the Court finds that TQL has provided clear and convincing evidence that the Agreement with Defendant Cain is reasonable and designed to protect TQL's legitimate business interests and is therefore enforceable.

TQL has an extensive history of using litigation to enforce the non-compete agreements it enters into with employees. TQL notes that courts have routinely found its non-compete agreements to be enforceable. (Doc. 6 at 9). The one case decided in the Southern District of Ohio, *Dangelo v. Total Quality Logistics, LLC*, 2009 WL 10679469 (S.D. Ohio Aug. 24, 2009), is particularly instructive here.

In *Dangelo*, a former TQL employee—who held the same position as Cain—sought to enjoin TQL from enforcing an employee non-compete agreement virtually identical to the Agreement before this Court. The district court ultimately denied the plaintiff's motion for a temporary restraining order and preliminary injunction because it

found TQL's non-compete provision to be reasonable and enforceable.[1]

First, the *Dangelo* court found the non-compete agreement's national geographical restriction to be reasonable and enforceable. Next, the court found the non-compete agreement's one-year limitation to be reasonable and enforceable. *Id.* at *3. However, the Court did find that, because TQL was only engaged in the truck brokerage industry, it would be unreasonable to prevent the employee from working in the train, boat, or plane brokerage industries was unreasonable. Therefore, the Court limited the agreement to only the trucking brokerage industry. *Id.*

Next, the *Dangelo* court found that the non-compete agreement was reasonable because TQL had provided the employee with intensive training. Additionally, the district court found that the employee had access to TQL's trade secrets, confidential information, and customer data because the employee (1) had access to confidential information such as expense information, pricing, profitability and margin information, the individualized needs and requirements of TQL customers, and the contact information for customers and (2) knew TQL's software and its marketing and business strategy. *Id.* at * 4. Finally, the court found that the enforcement of the non-compete would not be injurious to the public because it would not create a monopoly. *Id.*

---

[1] In *Dangelo*, the district court did find the non-compete provision unreasonable to the extent that it could prevent the employee from working in the train, boat, or plane brokerage industries, even though TQL only participated in the trucking industry. The district court modified the non-compete agreement to the trucking brokerage industry. Here, both TQL and OTC are direct competitors in the freight brokerage industry.

7

Here, Defendants argue that the terms of the Agreement are so overbroad as to be unenforceable because, on the face of the Agreement, Cain would be prevented from working as a janitor at a logistics company anywhere in the United States. The Court agrees that the Agreement as written is overbroad and, as was appropriate in *Dangelo*, should be modified to limit the Agreement only to the trucking brokerage industry. However, even with the modification, Cain's employment at OTC clearly breaches the Agreement because OTC is a direct competitor of TQL, Cain is in the exact same position as he was at TQL (not a janitor), and Cain purportedly has targeted TQL customers.

This Court agrees with the *Dangelo* court's reasoning and finds that the Agreement between TQL and Cain, as modified by the Court, is reasonable and enforceable under the *Raimonde* factors. Cain willingly signed the Agreement. Cain was then was provided with extensive training by TQL. Cain had access to TQL's trade secrets and confidential information, including customer lists, pricing information, and business strategy. *See Exel Inc. v. Xpedient Mgmt. Grp., LLC*, No. 2:17-CV-1076, 2018 WL 456315, at *6 (S.D. Ohio Jan. 16, 2018) ("information relating to employer's customer lists, pricing information, sales strategies and business philosophy amounted to trade secrets under Ohio law, where information was only provided to employees with limited access"). Accordingly, the Agreement's non-compete provision is reasonably tailored to protect TQL's legitimate business interests, and TQL has shown that it is likely to succeed on the merits.

Thus, because TQL has demonstrated that it is likely to succeed on the merits, the first element of the injunction test weighs in favor of issuing a preliminary injunction.

**B. Irreparable Harm**

The second factor in the injunctive relief analysis is whether the Plaintiff will suffer irreparable harm absent injunctive relief. To demonstrate irreparable harm, Plaintiff must show that it "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet*, 305 F.3d at 578.

Ohio courts have held that a substantial threat of imminent harm exists when a defendant employee "possesses knowledge of the employer's trade secrets and begins working in a position that causes her to compete directly with the former employer or the product line that the employee formerly supported." *Prosonic Corp. v. Stafford*, 539 F. Supp. 2d 999, 1007 (S.D. Ohio 2008) (quoting *Jacono v. Invacare Corp.,* No. 86605, 2006 WL 832451, at *7 (Cuyahoga Ohio App. 8th Dist.)). "[C]ourts have found that injunctive relief is warranted by establishing that an employee gained intimate knowledge of an employer's trade secrets and confidential information, and has begun working for a competitor in a substantially similar capacity." *Id.*

As previously discussed TQL is likely to establish that Cain had access to TQL's trade secrets and confidential information. It is also uncontested that Cain began working for a direct competitor of TQL in a substantially similar capacity. Accordingly, TQL has

9

established that Cain's breach of the Agreement by working at OTC and soliciting TQL customers constitutes actual irreparable harm.

Therefore, the second element of the injunction test weighs in favor of issuing a preliminary injunction.

**C. Harm to Others**

The third factor in the injunctive relief analysis is whether granting the injunction would harm the party enjoined or others. "The irreparable injury [the plaintiffs] will suffer if their motion for injunctive relief is denied must be balanced against any harm which will be suffered by [others] as a result of the granting of injunctive relief." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).

Defendants contend that Cain will be substantially harmed if the Court grants TQL's motion for injunctive relief because the Agreement creates an undue hardship. (Doc. 5 at 20–22). However, Cain willingly entered into the Agreement in order to work at TQL. Any harm that comes to Cain as a direct result of breaching the non-competition provision in the Agreement does not factor into the Court's balancing of harms. *See Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 855 ("Any harm to [defendant] would be as a direct result of his own actions" in breaching restrictive covenants in an employment agreement).

Thus, the third element of the injunction test does not weigh against issuing a preliminary injunction.

### D. Public Interest

The final factor in the injunctive relief analysis is whether granting the injunction would affect the public interest. Under Ohio law, "[p]reserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." *UZ Engineered Products Co. v. Midwest Motor Supply Co., Inc.*, 770 N.E.2d 1608, 1081 (Ohio Ct. App. 2001). Accordingly, this factor weighs in favor of granting an injunction.

Upon balancing the factors relating to the propriety of granting an injunction, the Court finds that TQL is entitled to injunctive relief.

Moreover, TQL requests that Cain's one-year prohibition be equitably tolled because Cain has been in breach of the Agreement since he was terminated from TQL. The Agreement contains the following tolling provision: "It is further understood and agreed that the running of the one (1) year set forth in this Paragraph shall be tolled during any time period during which Employee violates any provision of this Agreement." (Doc. 2-1 at § 9(vi)).

In *Rogers,* the Supreme Court of Ohio found that the trial court had erred, in part, in denying injunctive relief. *Rogers*, 57 Ohio St.3d at 9. The non-compete agreement had expired by the time the Supreme Court of Ohio issued its order. The Supreme Court of Ohio found that appellee should be enjoined from competing for a period as of the date of the court's decision in order to balance the competing interests. *Id.*

Because the parties bargained for a one-year limitation on the non-compete agreement and TQL should be afforded the benefit of its bargain, Cain's one-year prohibition is equitably tolled, and the one-year non-compete provision is calculated from the date of this Order.

## IV. CONCLUSION

For these reasons, Plaintiff's motion for a temporary restraining order, preliminary injunction, and expedited discovery (Doc. 3) are **GRANTED**. Plaintiff need not post a security bond, given Plaintiff's likelihood of success on the merits. The following injunctive relief is put in place effective immediately:

1. Defendant Cain shall immediately cease violating his Employee Agreement, including, but not limited to, the specific non-compete provisions set forth therein by, among other things, terminating his employment OTC;

2. Defendant Cain shall delete and destroy any and all of TQL's confidential information in his possession, custody, or control, including but not limited to information related to any TQL customer;

3. Defendant Cain shall cease any and all contact, communications, or attempts to communicate with any current and/or former TQL employee relating to TQL's business, operations, and/or customers and shall similarly cease any and all contact with any TQL customer(s) in accordance with the Employee Agreement;

4. Defendant OTC shall promptly remove, delete, and destroy any and all of TQL's confidential information in its possession, custody, or control, including but not limited to information related to any TQL customer, that it acquired or learned from Defendant Cain in whatever capacity;

5. Defendants shall verify, by affidavit executed under oath, and filed on this Court's docket, that each has fulfilled his or its obligations under this order.

Additionally, the parties shall confer and jointly submit a mutually agreeable period for expedited discovery to the Court via email to Chambers (black_chambers@ohsd.uscourts.gov) within seven days of this Order.

**IT IS SO ORDERED**.

Date: 3/21/2019

*Timothy S. Black*
Timothy S. Black
United States District Judge