# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | Case No. 1:19-cv-151 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| OTC LOGISTICS LLC, *et al.*, | : | |
| Defendants. | : | |

## ORDER DENYING DEFENDANTS' MOTION TO STAY PENDING DEFENDANTS' APPEAL TO THE SIXTH CIRCUIT

This civil action is before the Court on Defendants OTC Logistics LLC ("OTC") and Andrew M. Cain's motion to stay this Court's Order granting Plaintiff Total Quality Logistics, LLC ("TQL")'s Motion for Temporary Restraining Order, Motion for Preliminary Injunction, and Motion to Expedite (Doc. 10), and the parties' responsive memoranda. (Docs. 11, 12).

## I.  BACKGROUND

On February 25, 2019, Defendants removed this case from Clermont County Court of Common Pleas. (Doc. 1). Prior to removal, Plaintiff had filed a motion for temporary restraining order, motion for preliminary injunction, and motion to expedite. (Doc. 3). On February 27, 2019, this Court held a conference with the parties regarding the pending motions seeking injunctive relief. As is customary during these conferences, the Court addressed the briefing schedule for the motions and inquired whether an evidentiary hearing would be required. Neither party requested an evidentiary hearing.

The Court set an expedited briefing period after which time the motions would be ripe for review.

On March 1, 2019, Defendants filed a response to the motions. (Doc. 5). Attached to Defendants' response were affidavits of Defendant Cain and Kirk Lane, a managing director of OTC. (Docs. 5-2, 5-3). Defendants' response included a request for oral arguments. On March 5, 2019, Plaintiff filed a reply, which attached the affidavit of Marc Bostwick, a risk manager at TQL. (Docs. 6, 6-1).

On March 21, 2019, the Court granted Plaintiff's motion and entered a preliminary injunction. (Doc. 8, the "Order"). The Court found that TQL was entitled to a preliminary injunction because it had shown (1) a likelihood of success on the merits because the non-compete agreement between TQL and Cain (the "Agreement") was reasonable, as modified by the Court, and Cain had clearly breached the agreement; (2) TQL demonstrated irreparable harm absent an injunction because it evidenced that Cain had access to confidential information and had begun working for a direct competitor of TQL; (3) while Cain demonstrated a harm that would occur as a result of injunctive relief, that harm was a direct result of his breach of the Agreement, and, therefore, that factor, while not weighing in favor of TQL, did not weigh in Defendants' favor; and (4) a preliminary injunction was in the public interest because it protected the sanctity of contractual relationships and prevented unfair competition.

On March 26, 2019, Defendants appealed the Order to the United States Court of Appeals for the Sixth Circuit (Doc. 9) and filed this motion to stay pending the appeal.

## II. STANDARD OF REVIEW

Courts generally must consider four factors in considering whether to grant a stay pending appeal: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Meyers v. Cincinnati Bd. of Educ.*, No. 1:17-CV-521, 2019 WL 451355, at *3 (S.D. Ohio Feb. 5, 2019) (quoting *Michigan State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 661 (6th Cir. 2016)).

## III. ANALYSIS

### A. Likelihood of Success

Defendants argue that they have a strong likelihood of prevailing on the merits of their appeal. Defendants identify several reasons why they will prevail on appeal: (1) the Court did not conduct an evidentiary hearing or oral arguments to address disputed facts; (2) the Court's preliminary injunction is broader than the rationale provided by the Court; and (3) the Court's reliance on the Southern District of Ohio's decision in *Dangelo v. Total Quality Logistics, LLC*, 2009 WL 10679469 (S.D. Ohio Aug. 24, 2009) was in error.

First, when the Court inquired whether an evidentiary hearing was necessary, Defendants did not request a hearing. Even if Defendants had requested an evidentiary hearing in this matter, district courts have found that an evidentiary hearing is not required even when a such a request has been made. *Ohio Asphalt Paving, Inc. v. Bd. of*

*Comm'rs of Coshocton Cty., Ohio*, No. 2:05-CV-0336, 2005 WL 1865393, at *1 (S.D. Ohio Aug. 4, 2005). Here, while there are some facts in dispute, the Court finds that there were no <u>material facts</u> in dispute that went to the merits of the Order. When "no material facts are in dispute the district court is not required to conduct an evidentiary hearing prior to ruling on Plaintiff's motion for preliminary injunction." *Comm. to Impose Term Limits on the Ohio Supreme Court & to Preclude Special Legal Status for Members & Employees of the Ohio Gen. Assembly v. Ohio Ballot Bd.*, 218 F. Supp. 3d 589, 592 (S.D. Ohio 2016) (internal alterations omitted) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007)).

Defendants do not specifically highlight what materials facts they believe are in dispute, but in the Order, the Court found that there were no material facts in dispute regarding (1) the reasonableness of the Agreement and (2) that Cain breached the Agreement by working at a direct competitor in the trucking brokerage industry in the exact same position. Although the parties clearly dispute the characterizations of the facts at issue, the material facts made clear that TQL had shown a likelihood of success on the merits. For example, although Defendants describe the training received by Cain at TQL as limited, and Plaintiff describes the amount of training as extensive, it was undisputed that Cain received training from a TQL broker for five months (Docs. 5-2 at ¶ 9, 6-1 at ¶ 3) and participated in TQL classroom training (Docs. 5-2 at ¶ 10, 6-1 at ¶ 3). The Court found that this amount of training was substantial. (Doc. 8 at 8).

Accordingly, because no material evidence was in dispute, the Court was not required to conduct an evidentiary hearing.

Additionally, unlike an evidentiary hearing, Defendants did request oral arguments. The Court found that, as explained above, the evidence provided by the parties was clear on its face and oral argument was not necessary. *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, at *7, 2006 WL 2128929, at *2 (S.D. Ohio July 27, 2006) ("Local Rule 7.1(b)(2) leaves the court with discretion to grant a request for oral argument.").

Second, Defendants argue that the Order stated that the Agreement "was overbroad as written and should be modified, yet no such modification is made in the actual order." (Doc. 10 at 4). This argument strains credulity as the Court's Order specifically states that the Agreement is overbroad and "<u>should be modified to limit the Agreement only to the trucking broker industry</u>." (Doc. 8 at 8 (emphasis added)). The affidavit submitted by OTC specifically states that "OTC is in the transportation and trucking industry." (Doc. 5-3 at ¶ 3). Therefore, the Court found that even with the modification, Cain clearly breached the Agreement by working at OTC, a trucking broker, in the same position he held at TQL. (Doc. 8 at 8).

Third, Defendants argue that the Court erred by relying on *Dangelo* because that case involved the a "different employee involving entirely different facts." (Doc. 12 at 3). As an initial matter, the Court notes that the *Dangelo* case, which was resolved in this district, involved: (1) TQL, (2) a nearly identical non-compete agreement, (3) similar

5

training provided to TQL employees, (4) similar TQL employee access to confidential information, and (5) similar TQL employee access to customers. The Court does not find it was an error to rely on such a case that is directly on point to the questions before the Court. Defendants try to distinguish this case from *Dangelo* because in *Dangelo* the employee quit his job at TQL to join competitor while here Cain was fired by TQL for falsifying a doctor's note and then joined OTC on the same day he was fired. (Docs. 6-1 at ¶ 10, 5-2 at ¶ 2). The Court is unclear on how this distinction affects either the reasonableness of the Agreement or Cain's breach of the Agreement.

Accordingly, the Court does not find error in its decision that would demonstrate that Defendants are likely to succeed on their appeal. Therefore, the first factor weighs against granting a stay.

### A. Irreparable Harm

The second factor in determining whether a stay pending appeal is appropriate is whether the Defendants will suffer irreparable harm absent a stay. To demonstrate irreparable harm, Defendants must show that they "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet*, 305 F.3d at 578.

Defendants argue that enforcement of the Agreement imposes an undue hardship on Cain because it provides him with no way to support his family (Doc. 5-2 at ¶34), and that the harm is irreparable because he "has no cause of action available to him to recover

lost wages if the restrictive covenant is enforced by the Court." (Doc. 12 at 3). Defendants cite to *Kyrkos v. Superior Bev. Group, Ltc.*, 2013-Ohio-4597, 2013 WL 5676256, at * 5 (8th Dist.) for the proposition that where an injunction deprives a former employee of her sole means of financial support, a non-compete agreement is unenforceable. However, whether a restrictive covenant deprives an employee from her sole means of support is <u>one of nine</u> factors to be considered by courts in assessing the reasonableness of a non-compete agreement. *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 544 (Ohio 1975). The *Kyrkos* considered several factors, including that the trial court had entered a preliminary injunction eighteen months after the employee had separated from her employer, in determining that a preliminary injunction was not warranted.

Yet here Cain is not prohibited from working, or even using his general skills and experiences he developed at TQL. Indeed, Cain is permitted to work for any freight brokerage employer; he is solely prohibited from working in the trucking brokerage industry.[1] Moreover, the Court stands by its finding that, because the harm Cain identifies is a result of his decision to breach the Agreement, he did not demonstrate that the third factor in the preliminary injunction analysis weighed in his favor.

Nevertheless, the Court is cognizant that Cain will suffer harm by not being allowed to work at OTC, and he may not be able be compensated by monetary damages if the Agreement is ultimately found to be unenforceable. Therefore, the second factor in

---

[1] The fact that Cain became employed by OTC the same day as he was fired from TQL suggests that he did not even attempt to obtain a job with a company that was not a direct competitor of TQL.

the Court's consideration of whether to grant a stay pending appeal weighs slightly in Defendants' favor.

### B. Harm to Others

For the same reasons provided in the Order discussing the potential for irreparable harm to TQL absent a preliminary injunction, the Court finds that TQL has clearly demonstrated that it will be harmed by a stay of the preliminary injunction. (Doc. 8 at 9–10).

Defendants argue that the third factor weighs in Defendants' favor because OTC will be harmed if the injunction is not stayed pending appeal. As an initial matter, Defendant OTC is appealing the Order, and thus it must demonstrate that it will suffer <u>irreparable harm</u> absent a stay pending appeal. Here, OTC has made no such showing. Indeed, OTC has not demonstrated a clear harm. OTC argues it will be harmed because "the Order does not address whether Cain can or cannot work for related companies of OTC that do not compete with TQL. It is unclear what actions OTC (and by extension other OTC employees) can and cannot take until this order is further clarified." (Doc. 12 at 5).

The Court's Order is clear: the Agreement, as modified by the Court, prohibits Cain from working in the trucking broker industry. OTC is a competitor of TQL <u>in the trucking broker industry</u>. OTC cannot employ Cain for one year from the date of the Order. Accordingly, Defendants' motion to stay does not demonstrate that OTC will suffer harm absent a stay of the preliminary injunction.

8

Thus, because the third factor weighs against granting a stay pending appeal.

## C. Public Interest

For the same reasons provided in the Order, the Court finds that the public has an interest in the enforcement of a preliminary injunction in this case. (Doc. 8 at 11).

Thus, the fourth factor weighs against granting a stay pending appeal.

## IV. CONCLUSION

For these reasons, Defendants' motion to stay pending Defendants' appeal to the Sixth Circuit (Doc. 10) is **DENIED.**

**IT IS SO ORDERED**.

Date:      4/15/19

Timothy S. Black
United States District Judge